# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

NEW MEXICO CONSOLIDATED
CONSTRUCTION, LLC, a New Mexico
Limited Liability Company,

      Appellant,

vs.                                                                        No. CIV 14-0171 JB/WPL

CITY COUNCIL OF THE CITY OF SANTA
FE,

      Appellee,

and

NEW MEXICO CONSOLIDATED
CONSTRUCTION, LLC, a New Mexico
Limited Liability Company,

      Plaintiff,

vs.

DAVID COSS, Mayor of the City of Santa Fe,
personally and as Mayor; REBECCA
WURZBERGER, personally and as Mayor Pro
Tem of the City of Santa Fe; PATTI J.
BUSHEE, CHRIS CALVERT, ROSEMARY
ROMERO, MICHAEL M. CHAVEZ,
CARMICHAEL A. DOUGLAS, MATTHEW
F. ORTIZ, and RONALD S. TRUJILLO,
Members of the City Council of the City of
Santa Fe, personally and as Officials of the City
of Santa Fe; ROBERT ROMERO, City
Manager, GENO ZAMORA, City Attorney, and
MEL MORGAN, City Finance Director,
personally and as employees or officials of the
City of Santa Fe; SHARON WOODS, KAREN
WALKER, CELILIA RIOS, DEBORAH
SHAPIRO, DAN FEATHERINGILL, JOHN
KANTNER, ROD COLLIER ACTON, FRANK
D. KATZ, and CHRISTINE MATHER,

personally and as Members of the Santa Fe
Historic Design Review Board,

                    Defendants.

## MEMORANDUM OPINION AND AMENDED ORDER[1]

**THIS MATTER** comes before the Court on the Motion for Summary Judgment That Federal Claims in the Third Amended Complaint Are Barred by the Doctrine of Res Judicata, filed June 25, 2014 (Doc. 26)("Motion").  The Court held a hearing on the Motion on December 19, 2014.  The primary issue is whether the Stipulation of Dismissal of All Federal Claims Against Defendants with Prejudice, No. CIV 12-0513 KBM/RHS (Doc. 14)(D.N.M. June 15, 2012)("Stipulation"), entered in an earlier case, bars the federal claims in the Third Amended Complaint for Damages for Deprivation of Rights Under the New Mexico Constitution and the Constitution of the United States, 42 U.S.C. § 1983, Interference with Contractual Relations, Taking and Inverse Condemnation, filed February 24, 2014 (Doc. 1-1)("Current Complaint"), by way of claim preclusion.  Because the Stipulation dismissed "any federal claim brought [in an earlier complaint based on the same incident], express or implied . . . with prejudice," claim preclusion bars the federal claims in the Current Complaint.  The Court, therefore, grants the Motion and dismisses all federal claims.  There being no remaining federal claims and this case being before the Court exclusively on the Court's federal-question subject-matter jurisdiction, the Court will remand this case to the First Judicial District Court for the State of New Mexico.

---

[1]On March 7, 2015, the Court entered an Order granting the Motion for Summary Judgment That Federal Claims in the Third Amended Complaint Are Barred by the Doctrine of Res Judicata, filed June 25, 2014 (Doc. 26).  See Order, filed March 7, 2015 (Doc. 101).  The Court stated that it would "at a later date issue a memorandum opinion more fully detailing its rationale for this decision."  Order at 2 n.1.  This Memorandum Opinion is the promised opinion.  Additionally, the Court will amend the Order to add that it will remand the case to state court -- a conclusion that follows logically from the dismissal of all federal claims but which the Court did not explicitly include in the Order.

## FACTUAL BACKGROUND

On April 13, 2012, Plaintiff-Appellant New Mexico Consolidated Construction Services, LLC ("NM Consolidated") filed a Notice of Appeal and Petition for Certiorari and Complaint for Damages Under 42 U.S.C. § 1983, Interference with Contractual Relations, Taking, Inverse Condemnation and Civil Conspiracy in the First Judicial District Court for the State of New Mexico, No. CIV 12-0513 KBM/RHS (Doc. 1-1)(D.N.M. Apr. 13, 2012)("First Complaint"). See Motion ¶ 1, at 4; Plaintiff's Response to Motion for Summary Judgment That Federal Claims in the Third Amended Complaint Are Barred by the Doctrine of Res Judicata ¶ 1, at 2, filed August 15, 2014 (Doc. 35)("Response")(admitting this fact). The First Complaint names as defendants all of the individuals and entities now named as Defendants in the Current Complaint; it also names Defendant-Appellee City Council of Santa Fe as an appellee. See First Complaint ¶¶ 7-13, at 11-12; Motion ¶ 2, at 4; Response ¶ 2, at 2 (admitting this fact). The First Complaint alleged, among its five claims, two federal causes of action relevant to this case: (i) a cause of action in Count III, under the Fifth and Fourteenth Amendments to the Constitution of the United States, for a taking of property without just compensation, see First Complaint ¶¶ 104-105, at 28; and (ii) a cause of action in Count V, under 42 U.S.C. § 1983, for violations of unspecified "rights and privileges guaranteed by the Constitution," First Complaint ¶¶ 107-108, at 30-31. See Motion ¶ 3, at 4; Response ¶ 3, at 3 (admitting this fact).

On May 12, 2012, the defendants in that action removed the case to the United States District Court for the District of New Mexico. See Notice of Removal, No. CIV 12-0513 KBM/RHS (Doc. 1)(D.N.M. May 5, 2012); Motion ¶ 4, at 5; Response ¶ 4, at 3 (admitting this

fact).[2]   On June 13, 2012, NM Consolidated filed a Stipulation of Dismissal of All Federal Claims Against Defendants with Prejudice, No. CIV 12-0513 KBM/RHS (Doc. 13)(D.N.M. June 13, 2012),[3] dismissing all federal claims against all defendants in that action with prejudice.[4]  See Motion ¶ 6, at 5; Response ¶ 6, at 3 (admitting this fact); id. ¶ 1, at 6; Defendants' Reply in Support of Their Motion for Summary Judgment That Federal Claims in the Third Amended Complaint Are Barred by the Doctrine of *Res Judicata* ¶ 1, at 2, filed September 5, 2014 (Doc. 44)("Reply")(admitting this fact).   NM Consolidated's counsel and the Defendants' counsel signed the Stipulation.  Stipulation at 2-3; Motion ¶ 7, at 5; Response ¶ 7, at 3 (admitting

_____

[2]The Defendant-Appellees ask the Court to find that "[t]he federal takings and Section 1983 claims alleged in Counts III and V of the [First Complaint] are the same as the causes of action alleged in Counts II and I, respectively, of the Third Amended Complaint in the Current Proceeding."  Motion ¶ 5, at 5.  NM Consolidated disputes that this assertion is true, and, as this question is a legal one -- not a factual one -- the Court will defer consideration of it to the Analysis.  See Response ¶ 5, at 3.

[3]Two days later, the parties replaced this document with the Stipulation, which is identical, except that it corrects a typographical error in the earlier document.  All parties to that case signed both documents.

[4]The Court notes that, a week before filing the Stipulation, NM Consolidated filed a Notice of Voluntary Dismissal of Complaint for Damages for Interference with Contractual Relations, Inverse Condemnation, Taking, Civil Conspiracy and Deprivation of Rights (42 U.S.C. § 1983) Under Rule 41(A)(1), No. CIV 12-0513 KBM/RHS (Doc. 10)(D.N.M. June 6, 2012)("Dismissal Notice").   The Dismissal Notice purports to voluntarily dismiss the "complaint" portion of the First Complaint, while leaving intact the "notice of appeal" portion.  See Dismissal Notice at 1.  The Dismissal Notice purports to operate "under Fed. R. Civ. P. 41(a)(1)[, because] no responsive pleading has been filed," Dismissal Notice at 1, but the defendants had already filed a responsive pleading -- to both portions of the First Complaint -- fifteen days earlier, see Defendants' Answer to Notice of Appeal and Petition for Writ of Certiorari and Complaint for Damages for Deprivation of Rights Under 42 U.S.C. § 1983, Interference with Contractual Relations, Taking, Inverse Condemnation and Civil Conspiracy ¶¶ 1-108, at 4-12, No. CIV 12-0513 KBM/RHS (Doc. 4)(D.N.M. May 5, 2012).  Regardless of the Dismissal Notice's effect, however, the Stipulation removed all doubt that all federal claims were dismissed with prejudice.  See Stipulation at 2 ("It is the intent of this stipulation that any federal claim brought in this matter, express or implied, is dismissed with prejudice, however, no claims based on the Constitution, Statutes or Common Law of the State of New Mexico will be dismissed.").

this fact).  The Stipulation dismissed, with prejudice, Count III's Fifth Amendment takings claim and Counts V's federal due-process, equal-protection, conspiracy, and § 1983 claims.  See Stipulation at 2; Motion ¶ 8, at 5; Response ¶ 8, at 4 (admitting this fact).  The Stipulation further provides:

> It is the intent of this stipulation that any federal claim brought in this matter, express or implied, is dismissed with prejudice, however, no claims based on the Constitution, Statutes or Common Law of the State of New Mexico will be dismissed.  Plaintiff shall be free to allege any claim based on the Constitution, Statutes or Common Law of the state of New Mexico on remand to the District Court of the First Judicial District.

Stipulation at 2; Motion ¶ 9, at 5-6.  See Response ¶ 9, at 4 (admitting this fact).  The Stipulation preserved the counts based upon state causes of action.  See Response ¶ 2, at 6; Reply ¶ 2, at 3 (admitting this fact).  With the federal claims dismissed, the Honorable Karen B. Molzen, United States Magistrate Judge for the District of New Mexico, remanded the case to state court.  See Order of Remand, No. CIV 12-0513 KBM/RHS (Doc. 16)(D.N.M. July 11, 2012); Motion ¶ 10, at 6; Response ¶ 10, at 4 (admitting this fact).

The case proceeded in state court under cause No. D-101-CV-2012-01054.  See Response ¶ 3, at 6; Reply ¶ 3, at 3 (admitting this fact).  On or about January 22, 2013, NM Consolidated served subpoenas on the New Mexico School for the Arts ("NM School") and the New Mexico School for the Arts/Arts Institute ("NM Institute"), requesting documents and tangible items relating to any dealings between the two organizations and the City of Santa Fe in regard to NM Consolidated's property, St. Catherine's Industrial School.[5]  Response ¶ 4, at 6; Reply ¶ 4, at 3

---

[5]The Defendant-Appellees admit this fact, but also note that the NM School and the NM Institute

> objected to the subpoenas that the NM Consolidated issued on February 15, 2013. Thereafter, on April 16, 2013, the trial court entered an order that limited the scope of NMCCS's subpoenas and directed NMCCS to pay all costs relating to

(admitting this fact). The two organizations responded to the subpoenas by producing at least six documents in which City of Santa Fe officials expressed interest in acquiring St. Catherine's during the same time period that NM Consolidated had a zoning petition before the City Council.[6] See Response ¶ 5, at 6-7; id. ¶ 12, at 8; Reply ¶ 5, at 3 (admitting this fact); id. ¶ 12, at

---

retrieval of the subpoenaed documents and attorney's fees and costs. At a hearing on June 17, 2013, the trial court entered an order that NMCCS pay $11,790.17 in attorney's fees, and NMCCS has appealed that decision to the New Mexico Court of Appeals. Thereafter, NMCCS brought a separate federal law suit against NMSA and the Institute.

Reply ¶ 4, at 3 (citation omitted). The Court will not consider this fact undisputed, as the Defendant-Appellees -- i.e., the summary-judgment movants -- raised it for the first time in their Reply. See D.N.M. L.R.-Civ. 56.1(b). In any event, the additional fact is not needed to dispose of the Motion on the merits.

[6]The Court has modified this fact from NM Consolidated's assertion to account for the Defendant-Appellees' dispute. NM Consolidated asks the Court to find undisputed that "[t]he organizations responded to the subpoenas by producing documents showing that they had been involved in negotiations with the City to purchase or lease St. Catherine's from the City during a period when the Plaintiff had a zoning petition being heard by the city," and cites to the six documents -- attached to the Response -- that the NM School and the NM Institute produced. Response ¶ 5, at 6-7. The Defendant-Appellees "admit that the NMSA and the Institute produced" the six documents, but disagree that they constitute "negotiations with the City [for] purchase." Response ¶ 5, at 6. See Reply ¶ 5, at 4. After reviewing the documents, the Court agrees and will modify the fact, accordingly, to state that the officials "expressed interest in acquiring," which is the terminology that NM Consolidated uses in its very next proposed fact. Response ¶ 6, at 7.

The Defendant-Appellees also argue that the first of the six documents, the Confidential Closed Executive Session Notes, filed August 15, 2014 (Doc. 35-1), is inadmissible as hearsay under rule 802 of the Federal Rules of Evidence and lacks authentication under rule 901(a), and that the Court thus cannot consider it in ruling on the Motion under rule 56(c)(2) of the Federal Rules of Civil Procedure. See Reply ¶ 5, at 3-4. They assert that "there is no evidence to identify the individual who made these notes" and that the notes are thus inadmissible per se. Reply ¶ 5, at 4. The Court agrees that the document is, based on the materials that NM Consolidated presented, inadmissible, and the Court will not use the document in ruling on the Motion. NM Consolidated may have been able to use the document, and it may still be able to use the document at trial -- although that trial will now be in state court and subject to state-law evidentiary rules. Rule 56(c)(2) refers only to evidence that "cannot be presented in a form that would be admissible" and not to evidence that would be inadmissible in some forms but admissible in others. NM Consolidated likely knows who made the notes, and that person can both authenticate them -- thus satisfying rule 901 -- and, possibly, fit them into a hearsay

6 (admitting this fact).[7]   City of Santa Fe officials had expressed interest in acquiring

St. Catherine's, but the City of Santa Fe did not have sufficient funds to purchase it or to pay fair

market value in condemnation proceedings.[8]   See Response ¶ 6, at 7; Reply ¶ 6, at 5.  The zoning

---

exemption or exception under rule 801 or 803, respectively.  It is NM Consolidated's burden to
demonstrate the admissibility of evidence of which it is the proponent -- at least once the non-
proponent has put forth a prima facie showing of inadmissibility.  The Court understands that the
Plaintiff-Appellees raised this evidentiary argument for the first time in the Reply, but, because
NM Consolidated first referenced the evidence in the Response, the Reply was the Defendant-
Appellees' only chance to raise the argument.  If NM Consolidated wished to press the issue, it
could have asked for -- and the Court would have granted -- leave to file a surreply for the
limited purpose of addressing the Defendant-Appellees' evidentiary argument.  See D.N.M. LR-
Civ. 7.4(b); Walker v. THI of N.M. at Hobbs Ctr., No. CIV 09-0060 JB/KBM, 2011 WL
2728344, at *1 (D.N.M. July 6, 2011)(Browning, J.)("A surreply is appropriate and should be
allowed where new arguments are raised in a reply brief.").  In any event, the Court has looked at
the exhibit, and its admission would not change the Court's ruling on the Motion.

Last, the Court notes that NM Consolidated presents no evidence to support its assertion
that the six attached documents were each produced "during a period when the Plaintiff had a
zoning petition being heard by the City," but, as the Defendant-Appellees have not specifically
disputed this fact and the Court has no independent reason to doubt its accuracy, the Court will
deem it undisputed pursuant to rule 56(e)(2).

[7]NM Consolidated also asks the Court to find the following two facts undisputed:

13.   The above documents produced by NMSA and the Institute
establish questions of material fact as to whether the Plaintiff received a fair
hearing from the HDRB where the City was actively interested in acquiring title
to St. Catherine's at the time it was hearing the Plaintiff's zoning petition.

14.   The above documents produced by NMSA and the Institute
establish questions of material fact in support of the Plaintiff's claims of violation
of due process and property rights as alleged in the Third Amended Complaint
that were not known or discoverable through due diligence at the time of
dismissal of the previous federal claims.  See, e.g., ¶¶ 58, 59 and Counts I
and II.

Response ¶¶ 13-14, at 8.  These are essentially legal arguments -- not factual assertions -- and the
Defendant-Appellees object to them, likewise using legal arguments.  See Reply ¶¶ 13-14, at 6.
The Court deems these two proposed facts disputed.

[8]The Defendant-Appellees reply to this fact with the following statement:

The City Defendants admit that Document 35-11 shows that the New
Mexican published an article that supports the allegations contained in paragraph

hearing before the City of Santa Fe's Historic Design Review Board ("SF Design Board")

requested the relocation of historic buildings on the St. Catherine's campus. See Response ¶ 7,

at 7; Reply ¶ 7, at 5 (admitting this fact); Electronic Mail Transmission from John Polk to David

Rasch Re: St. Catherine's Indian School, filed August 15, 2014 (Doc. 35-12). In March, 2011,

the United States Department of Veterans Affairs posted a Notice of Availability and a Draft

Environmental Assessment of the School property for comment, giving notice that it intended to

purchase property around St. Catherine's school to expand the Santa Fe National Cemetery.[9] See

Response ¶ 8, at 7; Reply ¶ 8, at 5.[10]   NM Consolidated filed the petition to relocate the buildings

with the SF Design Board on September 12, 2011, the SF Design Board denied the petition on

_____

6 of NMCCS's Facts.  However, the City Defendants note that this article was
posted in September of 2011, which means that it was available to NMCCS at the
time it filed its [First] Complaint.  Additionally, the record shows that NMCCS
either read the article or was otherwise aware of the contents when it filed its
[First] Complaint because NMCCS states in paragraph 70 of its [First] Complaint,
that there were reports circulating in the media about the City's intent to acquire
the property for the NMSA.

Reply ¶ 6, at 5 (citations omitted).  Although this excerpt does not constitute an admission, it
"fails to properly address [the ]other party's assertion of fact as required by Rule 56(c)," and,
thus, the Court deems NM Consolidated's fact to be undisputed pursuant to rule 56(e)(2).

[9]NM Consolidated asks the Court to find undisputed that the Veteran's Administration
"intended to purchase [NM Consolidated's] property to expand the Santa Fe National
Cemetery," Response ¶ 8, at 7, but the Defendant-Appellees object, noting that "[t]he Notice of
Availability specifically said that the properties subject to the National Register of Historic
Places, which would include the property where the landmark buildings were located, were *not
selected* for possible purchase by the VA," Reply ¶ 8, at 5.  The Court agrees with the
Defendant-Appellees and modifies NM Consolidated's proposed fact, accordingly.

[10]NM Consolidated asks the Court to find undisputed that "[r]elocation of the buildings
would clear land on the property for a sale to the federal government to expand the adjoining
Veteran's Cemetery," Response ¶ 9, at 7, and that "[a] denial of [NM Consolidated's] petition by
the City would severely affect the property value of St. Catherine's and reduce the price to a
level that the City could afford," Response ¶ 10, at 7, but cites nothing in the record to support
either assertion.  The Defendant-Appellees object to both of these proposed facts pursuant to rule
56(c)(1), and the Court will thus decline to find them undisputed.

January 10, 2012, and the City Council of Santa Fe formally denied NM Consolidated's appeal from the SF Design Board on March 28, 2012.  See Response ¶ 11, at 7; Reply ¶ 11, at 6 (admitting this fact); City of Santa Fe Historic Design Review Board Findings of Fact and Conclusions of Law, filed August 15, 2014 (Doc. 35-13).

On May 10, 2013, NM Consolidated filed an Amended Notice of Appeal and Petition for Certiorari and Second Amended Complaint for Damages for Deprivation of Rights Under the Federal and New Mexico Constitutions, Interference with Contractual Relations, Taking, Inverse Condemnation and Civil Conspiracy in the First Judicial District Court for the State of New Mexico ("Second Complaint").  Motion ¶ 11, at 6; Response ¶ 11, at 4 (admitting this fact).  The Second Complaint named two new defendants: (i) the NM School, which NM Consolidated identified as a "New Mexico charter school formed under the laws of the State of New Mexico governing such schools, and is a part of the state and local public schools administration and . . . [a] state actor"; and (ii) the NM Institute, which NM Consolidated identified as a "New Mexico nonprofit corporation, acting on behalf of and for the Charter School or as agents of the Charter School."  Motion ¶ 12, at 6-7; Response ¶ 12, at 4 (admitting this fact).  On July 15, 2013, NM Consolidated withdrew its Second Complaint.  See Motion ¶ 13, at 7; Response ¶ 13, at 4 (admitting this fact).

On September 20, 2013, in a new and separate action in federal court, NM Consolidated filed a Complaint for Damages for Deprivation of Rights Pursuant to 42 U.S.C. [] 1983, Interference with Contractual Relations and Civil Conspiracy, No. CIV 13-0907 WPL/KBM (Doc. 1)(D.N.M. Sept. 20, 2013)("Third Complaint"), against the NM School and the NM

- 9 -

Institute.  Motion ¶ 14, at 7; Response ¶ 14, at 4 (admitting this fact).[11]  On October 17, 2013, the

Honorable Sarah M. Singleton, New Mexico District Judge for the First Judicial District, issued

an Order Granting in Part and Denying in Part Plaintiff's Motion for Leave to File a Third

Amended Complaint, No. D-101-CV-2012-01054 (N.M. Dist. Ct. Oct. 17, 2013)("Order"),

which allowed NM Consolidated to allege claims under 42 U.S.C. § 1983 to the extent that they

had not been alleged in the First Complaint or Second Complaint.  See Motion ¶ 16, at 8;

Response ¶ 16, at 4-5 (admitting this fact).  Judge Singleton stated:

> 1.      The 42 USC § 1983 claims that were not alleged in the [F]irst and
> [S]econd complaint can be raised in the [Current Complaint].  Specifically, those
> allegations include that there were third parties who had some financial interest in
> obtaining the property at issue in this case, or who somehow colluded with the
> City of Santa Fe in an effort to gain the property and to prevent Plaintiff from
> achieving its desire to sell a portion of the property, are allowed.
>
> 2.      The [S]tipulation filed in Federal Court, as written, precludes what
> was raised in the [First] complaint either expressly or impliedly, but it does not
> preclude claims that are based on newly discover[ed] evidence that alleges new
> theories for potential violations of 42 USC § 1983.
>
> 3.      The amendment as to 42 USC § 1983 is denied because the case
> law requires some sort of race or class based animus and that is not alleged.
>
> 4.      The claim under federal law for the taking of property without
> compensation, which to some extent are the bulk of which [sic] was dismissed
> with prejudice by the Federal Court, are allowed so long as the new facts would
> support a federal takings claim.
>
> 5.      No ruling is made regarding how the Federal Court should treat the
> prior Stipulation of Dismissal entered into by the parties.

---

[11]The Defendant-Appellees ask the Court to deem undisputed that the Third Complaint "arises from the same set of facts that appear in the [Current Complaint], although the tenor of the [Third] Complaint against NMSA and the Institute is focused on their allegedly tortious and unconstitutional acts in conspiring between themselves and with the City and/or others to deprive NM Consolidated of its property."  Motion ¶ 15, at 7.  NM Consolidated disputes that this assertion is true, and, as this question is a legal one -- not a factual one -- the Court will defer consideration of it to the Analysis.  See Response ¶ 15, at 4.

Order ¶¶ 1-5, at 1-2.[12]   See Motion ¶¶ 17-18, at 8; Response ¶¶ 17-18, at 5 (admitting these facts).

## PROCEDURAL BACKGROUND

On February 12, 2014, NM Consolidated filed the Current Complaint in the state court, reasserting its claims for takings and deprivation of property rights under § 1983.  See Motion ¶ 19, at 8; Response ¶ 19, at 5 (admitting this fact).  The Current Complaint drops the claims that the Second Complaint had alleged against the NM School and the NM Institute.  See Motion ¶ 20, at 9; Response ¶ 20, at 5 (admitting this fact).  The Defendant-Appellees removed the case to federal court once again, giving rise to the current proceeding.  See Motion ¶ 21, at 9; Response ¶ 21, at 5 (admitting this fact); Notice of Removal, filed February 24, 2014 (Doc. 1). The Current Complaint mentions the NM School and the NM Institute in connection with the allegations against the Defendant-Appellees, and alleges:

a.   Since at least September 2011, during the time the Plaintiff's proposal was pending before the HDRB, there were discussions between members of the Governing Council of NMSA, members of the Board of Directors of the Arts Institute and City officials and City Council members regarding purchase of the Plaintiff's property by the City and a lease between the City and NMSA/Art Institute.

b.   On information and belief supported by documentary evidence, on or about September 21, 2011, City Manager Robert Romero, City Attorney Geno Zamora and City Finance Director Mel Morgan agreed with officials of NMSA/Art Institute to "acquire" the Plaintiff's property "through all means necessary."

c.   On or about September 2, 2011, over three (3) months before the Plaintiff's hearing before the HDRB and over four (4) months before the Proposed Relocation was denied by the HDRB, officials of NMSA/Art Institute agreed to solicit Robert Romero and Geno Zamora to create a Resolution for the City Council to acquire the Plaintiff's property and to

---

[12]The five quoted paragraphs constitute the entirety of the Order.

> solicit Mayor Cross to present the Resolution to the City Council *after the Plaintiff's proposal was denied by the HDRB*.

Current Complaint ¶¶ 57a-c, at 11-12 (emphasis in original).  See Motion ¶ 22, at 9; Response ¶ 22, at 5 (admitting this fact).

The First Complaint also mentioned the NM School in connection with allegations about the Defendant-Appellants' alleged plans to acquire NM Consolidated's property through purchase or condemnation, and alleged that there was talk that the City of Santa Fe desired to acquire the property and move NM School onto the grounds.  See Motion ¶ 23, at 9; Response ¶ 23, at 5 (admitting this fact); First Complaint ¶ 38, at 17; id. ¶¶ 70-72, at 21.  There are no allegations in either the First Complaint or the Current Complaint that the NM School is a for-profit business or that the City of Santa Fe's efforts to acquire NM Consolidated's property for NM School represents a non-public use, which would violate the Takings Clause, U.S. Const. amend. V.  See Motion ¶ 24, at 10; Response ¶ 24, at 6 (admitting this fact).  The Current Complaint presents additional facts in support of NM Consolidated's allegations that the City of Santa Fe intended to acquire NM Consolidated's property for the NM School and the NM Institute, and that the City took concerted steps to do so while NM Consolidated was petitioning the SF Design Board and the City Council to relocate some of the historic buildings on its property.  See Motion ¶ 25, at 10; Response ¶ 25, at 6 (admitting this fact).[13]

The Defendant-Appellees filed the Motion June 25, 2014.  They argue that they are entitled to summary judgment on the ground that the Stipulation entered in federal court in the

_____

[13]The Defendant-Appellees ask the Court to find undisputed that the Current Complaint "does not allege new theories of recovery under Section 1983 based on these facts as the [First Complaint] already alleged that the City had the intent of acquiring the NMCCS's property for this purpose ever since NM Consolidated purchased the property in 2005."  Motion ¶ 26, at 10.  NM Consolidated disputes that this assertion is true, and, as this question is a legal one -- not a factual one -- the Court will defer consideration of it to the Analysis.  See Response ¶ 26, at 6.

initial case -- the one that the First Complaint initiated -- bars the federal claims in the Current

Complaint.  See Motion at 16-19.  They argue that, "[t]o establish that res judicata applies, the

party asserting the defense must satisfy four (4) elements: (1) the prior suit must have ended with

a judgment on the merits; (2) the parties must be identical or in privity; (3) the suit must be based

on the same cause of action; and (4) the plaintiff must have had a full and fair opportunity to

litigate the claim in the prior suit."  Motion at 14 (emphasis in original)(citing Nwosun v. Gen.

Mills Restaurants, Inc., 124 F.3d 1255, 1257 (10th Cir. 1997)).  They address these prongs in

sequence.  First, they argue that the Stipulation was effectively a "judgment on the merits,"

because "NMCCS stipulated to a voluntary dismissal with prejudice of not only the takings and

Section 1983 deprivation of property claims in Counts III and V of the [First Complaint], but

also to claims alleging federal due process, equal protection, conspiracy and other claims

pursuant to 42 U.S.C. § 1983."  Motion at 16-17 (emphasis in original).  They assert that "Tenth

Circuit case law is clear" that when an order of dismissal under Rule 41(a)(1)(A)(i) is with

prejudice, it operates as a final adjudication on the merits.  Motion at 17 (citing Schmier v.

McDonald's LLC, 569 F.3d 1240, 1242 (10th Cir. 2009)).

Second, they assert that "there is no dispute" that the parties in the First Complaint's case

and in this case are the same.  Motion at 17.  Third, they argue that the Current Complaint "is

based on the same cause of action" as the First Complaint.  Motion at 17.  They address the

seemingly contrary implication in Judge Singleton's Order:

> Although Judge Singleton found that the Stipulation did not preclude
> federal claims that are based on newly discovered evidence alleging new theories
> for potential violations of Section 1983, the [Current] Complaint does not satisfy
> this requirement. . . .  NMCCS already alleged in the [First] Complaint that the
> City had the intent of acquiring NMCCS's property to move the NMSA onto the
> grounds ever since 2005 and that it was prepared to spend $2,000,000 to purchase
> it for that purpose or to condemn it.  The [Current] Complaint simply presents
> additional factual allegations to argue that the City Defendants followed through

on this intent while NMCCS's petition to relocate several of the historic buildings on its property was pending before the HDRB and/or before it went on appeal to the City Council.  The fact that a government has intentions to acquire private property for a public purpose through either purchase or its eminent domain powers does not violate the takings clause unless it does not offer just compensation.  Thus, there is no new theory of recovery for violation of Section 1983 on this set of facts.

And, NMCCS voluntarily dismissed any claims for conspiracy under Section 1983 in its Stipulation.  Accordingly, any allegations that the City Defendants conspired with the NMSA/Institute to deprive NMCCS of its property in violation of Section 1983 would certainly have to be considered federal claims that were "implied" in the [First] Complaint and the Stipulation governing that Proceeding.

Motion at 18 (citations omitted).  As to the last prong, the Defendant-Appellees again assert that its satisfaction is "undisputed."  Motion at 18.  They assert that no evidence exists to show that NM Consolidated "encountered any procedural limitations" in the First Complaint's case, and, thus, NM Consolidated's opportunity to litigate its claims to completion then and there were full and fair.  Motion at 19.

In its Response, NM Consolidated defends the viability of its claims, unsurprisingly, exclusively on the third prong.  See Response at 9-12.  It argues that the First Complaint and the Current Complaint "are based on a different set of facts and different alleged wrongs."  Response at 9 (emphasis omitted)(capitalization altered).  It asserts that ¶ 57a-k of the Current Complaint sets forth a "series of contacts . . . that would not have formed a basis for a federal claim if the City had not been considering the Plaintiff's Petition to relocate buildings on the St. Catherine's campus at the same time."  Response at 9.  NM Consolidated devotes substantial space to reiterating the factual bases and legal theory behind its claims, but relatively little time distinguishing the First Complaint -- and the claims that the Stipulation forfeited -- from those in the Current Complaint.  See Response at 9-12.  To the extent that it identifies a new theory, it is that the SF Design Board's and City Council's improprieties constitute a due-process violation,

- 14 -

and the Current Complaint alleges that violation, while the First Complaint focused solely on impropriety of the substantive decision.  See Response at 9-12.  It states that "[t]he exhibits [-- meaning the six documents that the NM School and the NM Institute produced in discovery --] show that the claims in the [Current] Complaint are based on different facts and circumstances tha[n] those expressed in the [First] Complaint."  Response at 12.

In their Reply, the Defendant-Appellees contend that NM Consolidated's due-process argument "is pure speculation and not supported by the[ six] exhibits."  Reply at 7.  They assert that NM Consolidated alleged all the same claims and theories in its First Complaint that it now alleges in the Current Complaint, and that the exhibits, at most, "simply provide additional evidence to support their initial claims."  Reply at 8.  They also note that the article from the *New Mexican*, to which NM Consolidated cites in support of many of its contentions, was published in September, 2011, several months before NM Consolidated filed the First Complaint.  See note 8, supra, and accompanying text.  The Defendant-Appellees sum up their argument as follows:

> [The Current] Complaint does not contain any *new* federal causes of action. NMCCS's due process claims are brought pursuant to 42 U.S.C. § 1983 and allege that the City Defendants acted under color of state law to deprive NMCCS of its property rights under the laws and Constitution of the United States.  These are the same claims that NMCCS alleged in Count V of its [First] Complaint, which were dismissed with prejudice when this case was removed to federal court the first time.
>
> Likewise, NMCCS's taking claim in Count II of [the Current] Complaint is based upon allegations that the City Defendants placed restrictions on the beneficial use of NMCCS's property.  This claim has nothing to do with the exhibits described above and/or NMSA and the Institute.  Rather, it is based upon the same Fifth Amendment takings claim that NMCCS alleged in its [First] Complaint and that takings claim was subsequently dismissed with prejudice.

Reply at 8-9 (emphasis in original)(citations omitted).

The Court held a hearing on December 19, 2014.  See Transcript of Hearing (taken December 19, 2014)("Tr.").[14]  At the hearing, NM Consolidated clarified its position that it is free to assert claims that, while identical in name or characterization to the claims in the First Complaint, arise out of evidence discovered after the date that the Stipulation was executed, June 13, 2012.  See Tr. at 12:5-13:5 (Court, Anderson, Polk).  NM Consolidated asserted that it filed the Current Complaint "incorporating federal claims based entirely upon facts that were . . . not known prior to entering into th[e S]tipulation."  Tr. at 14:2-4 (Polk).  The Court asked whether some of the Current Complaint's claims are based on events that occurred before June 13, 2012, to which NM Consolidated responded:

> Not really, Your Honor.  [Although] there may have been a few events that occurred before that, . . . the problem of it is . . . that we had our appeals . . . denied, and we did not know that the city and the school and their folks were acting in concert to prohibit us from developing the property.

Tr. at 14:25-15:8 (Court, Polk).

The remainder of the Court's questioning of NM Consolidated focused on NM Consolidated advancing its argument that, while the facts giving rise to a cause of action may have accrued before the First Complaint, (i) subsequent evidence supports a new theory of federal due-process, takings, and  § 1983 claims, thus making the Current Complaints new and distinct from the ones that the Stipulation dismissed; and (ii) NM Consolidated did not uncover all the evidence supporting those claims until after the Stipulation, and NM Consolidated could not have intended to dismiss a claim about which it knew nothing.

> THE COURT:  Well, but that just sounds like a takings claim, and wasn't that -- wasn't that what -- what you gave up?

---

[14]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final version may contain slightly different page and/or line numbers.

       MR. POLK:  Well, they all merge together in many ways, Judge.  I mean, you know, we're dealing with the same fundamental principles here.  The -- the -- it depends on how you -- how you view it.  A takings claim is they just walked in and said, we're going to take this property or we're going to flat refuse to allow you to develop it under any circumstances.  They didn't do that.  They went through this charade.

Tr. at 18:10-18 (Court, Polk).

       The Defendant-Appellees reiterated their position from the briefing, adding that "res judicata bars a party from litigating claims that were either actually raised or could have been raised in a previous action."  Tr. at 19:20-22 (Anderson).  The Court returned to NM Consolidated, which conceded that the "[S]tipulation covers the Fifth Amendment claim and it covers the 1983 claim[, but that n]othing else is covered."  Tr. at 27:22-23 (Polk).  The Court asked what other claims there could possibly be in this case, other than § 1983 claims, and NM Consolidated replied that it could sue directly under the Fifth and Fourteenth Amendments, without need for § 1983.  See Tr. at 27:25-28:8 (Polk, Court).

       NM Consolidated appeared to lose confidence in its legal position toward the end of the hearing, and began asking the Court whether and how it could use rule 60(b) to "reraise the federal claims" that the Stipulation dismissed.  Tr. at 29:10 (Polk).  NM Consolidated noted: "We were not aware we got caught because we didn't know what they were doing . . . ."  Tr. at 29:19-20 (Polk).  NM Consolidated expressed further interest in restyling its defense of the Motion into a rule 60(b) motion -- presumably filed in the First Complaint's case -- to reform the Stipulation.  See Tr. at 33:7-34:5 (Polk)("I could rephrase this into a 60(b) very -- very easily. . . .  [I]f you could give me 10 or 20 days to file a 60(b) motion . . . I think we could flesh out the record.").  The Court dissuaded NM Consolidated from filing a rule 60(b) motion and stated that it would work the issues out via its ruling on the Motion.  See Tr. at 35:1-3 (Court)("I

- 17 -

think it might be better just to hold off and let me sort of sort this out with this [M]otion rather than filing new motions.").

## LAW REGARDING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" Herrera v. Santa Fe Pub. Sch., 956 F. Supp. 2d 1191, 1221 (D.N.M. 2013) (Browning, J.)(quoting Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)). See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial."[15] Celotex Corp. v. Catrett, 477 U.S. at 331 (Brennan, J., dissenting) (emphasis in original). Once the movant meets this burden, rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

### 1.    The Genuine-Dispute Standard.

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries

---

[15]Although the Honorable William J. Brennan, Jr., then-Associate Justice of the Supreme Court of the United States, dissented in Celotex Corp. v. Catrett, this sentence is widely understood to be an accurate statement of the law. See 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice & Procedure § 2727, at 470 (3d ed. 1998)("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case.").

the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993) ("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." (internal quotation marks omitted)). Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256. See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, 'once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'" (citation omitted)). Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. Co. v. Omer, No. CIV 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(citing Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006); Fed. R. Civ. P. 56(e)). "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

- 19 -

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250. A mere "scintilla" of evidence will not avoid summary judgment. Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). Rather, there must be sufficient evidence on which the factfinder could reasonably find for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted). Where a rational trier of fact, considering the record as a whole, could not find for the nonmoving party, there is no genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**2.      General Analytical Principles.**

When reviewing a motion for summary judgment, the court should keep in mind certain principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249. Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability." Anderson v. Liberty Lobby, Inc., 477 U.S. at 254. Third, the court must resolve all reasonable inferences and doubts in favor of the nonmoving party, and construe all evidence in the light

- 20 -

most favorable to the nonmoving party.  See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  Fourth, the court cannot decide any issues of credibility.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

### 3. Summary Judgment in the Qualified-Immunity Context.

In Scott v. Harris, 550 U.S. 372 (2007), the Supreme Court of the United States concluded that summary judgment was appropriate where video evidence "quite clearly contradicted" the plaintiff's version of the facts.  550 U.S. at 378-81.  The Supreme Court explained:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.  Fed. R. Civ. P. 56(c).  As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587, 538 (1986)(footnote omitted).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986).  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.
>
> That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life.  Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him.  The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

550 U.S. at 380-81 (emphasis in original).

The United States Court of Appeals for the Tenth Circuit applied this doctrine in Thomson v. Salt Lake County, 584 F.3d 1304 (10th Cir. 2009), and explained:

> [B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]"  York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008) (quoting Scott [v. Harris], 550 U.S. at 380).

Thomson v. Salt Lake Cnty., 584 F.3d at 1312.  In Rhoads v. Miller, 352 F. App'x 289 (10th Cir. 2009)(unpublished)(Tymkovich, J.), the Tenth Circuit "explained that the blatant contradictions of the record must be supported by more than other witnesses' testimony[.]"  Lymon v. Aramark Corp., 728 F. Supp. 2d 1222, 1249 (D.N.M. 2010)(Browning, J.)(citation omitted).

> In evaluating a motion for summary judgment based on qualified immunity, we take the facts "in the light most favorable to the party asserting the injury."  Scott v. Harris, 550 U.S. 372, 377 (2007).  "[T]his usually means adopting . . . the plaintiff's version of the facts," 550 U.S. at 378, unless that version "is so utterly discredited by the record that no reasonable jury could have believed him," 550 U.S. at 380.  In Scott, the plaintiff's testimony was discredited by a videotape that completely contradicted his version of the events.  550 U.S. at 379.  Here, there is no videotape or similar evidence in the record to blatantly contradict Mr. Rhoads' testimony.  There is only other witnesses' testimony to oppose his version of the facts, and our judicial system leaves credibility determinations to the jury.  And given the undisputed fact of injury, Mr. Rhoads' alcoholism and memory problems go to the weight of his testimony, not its admissibility . . . .  Mr. Rhoads alleges that his injuries resulted from a beating rendered without resistance or provocation.  If believed by the jury, the events he describes are sufficient to support a claim of violation of clearly established law under Graham v. Connor, 490 U.S. 386, 395-96 (1989), and this court's precedent.

Rhoads v. Miller, 352 F. App'x at 291-92 (internal quotation marks omitted).  See Lymon v. Aramark Corp., 728 F. Supp. 2d at 1249-50 (quoting Rhoads v. Miller, 352 F. App'x at 291-92).  In a concurring opinion in Thomson v. Salt Lake County, the Honorable Jerome A. Holmes, United States Circuit Judge for the Tenth Circuit, stated that courts must focus first on the legal question of qualified immunity and "determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts

that will serve as the foundation for answering the legal question before the court" before inquiring into whether there are genuine issues of material fact for resolution by the jury.  584 F.3d at 1326-27 (Holmes, J., concurring)(citing Goddard v. Urrea, 847 F.2d 765, 770 (11th Cir. 1988)(Johnson, J., dissenting))(observing that, even if factual disputes exist, "these disputes are irrelevant to the qualified immunity analysis because that analysis assumes the validity of the plaintiffs' facts").

### 4.     **The Sham-Affidavit Rule**.

The Tenth Circuit has stated that "[t]here is authority for the proposition that in determining whether a material issue of fact exists, an affidavit may not be disregarded because it conflicts with the affiant's prior sworn statements."  Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986)(citing 10B Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice & Procedure § 2738, at 473-74 (2d ed. 1983) ("Wright & Miller"); 6 James Wm. Moore, Moore's Federal Practice ¶ 56.22[1], at 56-1325 to 56-1326 (1985 ed.)).  There are situations, however, where courts "disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue."  Franks v. Nimmo, 796 F.2d at 1237 (citing Foster v. Arcata Assocs., Inc., 772 F.2d 1453, 1462 (9th Cir. 1985); Biechele v. Cedar Point, Inc., 747 F.2d 209, 215 (6th Cir. 1984); Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657-58 (11th Cir. 1984); Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1364 (8th Cir. 1983); Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969)).  The policy underlying these decisions is the "conclusion that the utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony."  Franks v. Nimmo, 796 F.2d at 1237 (citation omitted).

> To determine whether a contradicting affidavit seeks to create a sham fact issue, [the Tenth Circuit] ha[s] looked to three factors: whether: "(1) the affiant was cross-examined during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain."

Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 973 (10th Cir. 2001)(quoting Rios v. Bigler, 67 F.3d 1543, 1551 (10th Cir. 1995)).  In Ralston v. Smith & Nephew Richards, Inc., the Tenth Circuit found that the district court did not abuse its discretion in excluding later contradictory declarations in rendering its summary judgment ruling.  See 275 F.3d at 973.  The Tenth Circuit noted that there was no question that the declarant was cross-examined in his deposition, "that he had access to the pertinent evidence at the time of his deposition," and "that there was nothing in the earlier deposition testimony reflecting any level of confusion or uncertainty concerning" the declarant's testimony "requiring clarification or explanation."  275 F.3d at 973.

**5.    Deferring Summary Judgment.**

Rule 56(d) provides:

**(d)    When Facts Are Unavailable to the Nonmovant.**

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1)    defer considering the motion or deny it;

(2)    allow time to obtain affidavits or declarations or to take discovery; or

(3)    issue any other appropriate order.

Fed. R. Civ. P. 56(d).  Before 2010, this rule was rule 56(f); rule 56(d) "carries forward without substantial change the provisions of former subdivision (f)."  Fed. R. Civ. P. 56(d) advisory

committee committee's notes to the 2010 amendments.  "A party who seeks relief under subdivision (d) may seek an order deferring the time to respond to the summary judgment motion."  Fed. R. Civ. P. 56(d) advisory committee committee's notes to the 2010 amendments. The rule permits a nonmovant to show by affidavit or declaration the need for additional discovery; a formal affidavit is thus not required.  See Fed. R. Civ. P. 56(d).  The rule permits a "written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit."  Fed. R. Civ. P. 56(c) advisory committee committee's notes to the 2010 amendments.

When a party files an affidavit or declaration, and moves for additional discovery time under rule 56(d), the party invokes the court's discretion.  See Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1553-54 (10th Cir. 1993).  "Unless dilatory or lacking in merit," a party's 56[(d)] application "should be liberally treated."  Jensen v. Redevelopment Agency of Sandy City, 998 F.2d at 1554 (citations omitted)(internal quotation marks).  "The general principle of Rule 56(d) is that summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to opposition."  Price ex rel. Price v. W. Res., Inc., 232 F.3d 779, 783 (10th Cir. 2000).  Rule 56(d) does not require, however, that summary judgment not be entered until discovery is complete.  See Price ex rel. Price v. W. Res., Inc., 232 F.3d at 784.

"Rule 56[(d)] is not a license for a fishing expedition . . . ."  Lewis v. Ft. Collins, 903 F.2d 752, 758 (10th Cir. 1990).  To invoke rule 56(d), the party filing the affidavit or declaration must state with specificity how the desired time would allow it to meet its burden in opposing summary judgment.  See Jensen v. Redevelopment Agency of Sandy City, 998 F.2d at 1554.  A party opposing summary judgment may not invoke rule 56(d) based solely upon the assertion

that discovery is incomplete or that specific facts necessary to oppose summary judgment are

unavailable.  See Jensen v. Redevelopment Agency of Sandy City, 998 F.2d at 1554.  Moreover,

while the summary judgment movant's exclusive control of information weighs heavily in favor

of relief under 56(d), see Price ex rel. Price v. W. Res., Inc., 232 F.3d at 783, merely asserting

such is insufficient to justify denial of summary judgment, see Jensen v. Redevelopment Agency

of Sandy City, 998 F.2d at 1554.  Furthermore, "if the party filing the Rule 56[(d)] affidavit has

been dilatory, or the information sought is either irrelevant to the summary judgment motion or

merely cumulative, no extension will be granted."  Jensen v. Redevelopment Agency of Sandy

City, 998 F.2d at 1554 (denying a rule 56(d) request and stating that "the record reflect[ed] that

plaintiffs were dilatory in pursuing discovery prior to the filing of their 56[(d)] affidavit").  See

Johnson v. Holmes, 377 F. Supp. 2d 1039, 1044-45 (D.N.M. 2004)(Browning, J.)(denying a

56(d) request where plaintiff did not explain why, during the discovery period that the court

allowed, he did not obtain the discovery sought in his motion).  The Tenth Circuit has

summarized rule 56(d)'s requirements as follows:

> A prerequisite to granting relief pursuant to Rule 56[(d)] is an affidavit
> furnished by the nonmovant.  Although the affidavit need not contain evidentiary
> facts, it must explain why facts precluding summary judgment cannot be
> presented.  This includes identifying the probable facts not available and what
> steps have been taken to obtain these facts.  In this circuit, the nonmovant also
> must explain[, with specificity,] how additional time will enable him to rebut
> movant's allegations of no genuine issue of fact.

Price ex rel. Price v. W. Res., Inc., 232 F.3d at 783 (internal quotations and citations omitted).

See Tadlock v. Lahood, 550 F. App'x 541, 547, 2013 WL 6284428, at *5 (10th Cir. Dec. 5,

2013)(unpublished)(citing Price ex rel. Price v. W. Res., Inc. for the requirements of rule 56(d)

after the 2010 amendment); Douglass v. United Auto Workers Local Union 31, 188 F. App'x

656, 658 (10th Cir. 2006)(stating that the affidavit must state how the additional time would

enable the party to meet its burden "with specificity"). A rule 56(d) affidavit or declaration must state, with specificity, what additional discovery is believed necessary. See Burke v. Utah Transit Auth. & Local 382, 462 F.3d 1253, 1264 (10th Cir. 2006); Chavez v. Perry, 142 F. App'x 325, 334 (10th Cir. 2005)("To resist summary judgment on this basis (56[(d)] ), a party must specifically identify what facts it seeks to discover and show how those facts would materially aid its case on the dispositive issues."). If a party does not file an affidavit or declaration, a district court does not abuse its discretion in denying discovery. See Tadlock v. Lahood, 550 F. App'x at 547, 2013 WL 6284428, at *5.

## LAW REGARDING RES JUDICATA IN FEDERAL-QUESTION CASES

"Under res judicata . . . a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in the prior action." Wilkes v. Wyo. Dep't of Emp't Div. of Labor Standards, 314 F.3d 501, 503-04 (10th Cir. 2002). The general rule is that "[t]he appealability of a judgment . . . does not hinder its preclusive effect." MACTEC, Inc. v. Gorelick, 427 F.3d 821, 832 (10th Cir. 2005)(citing 18A Wright & Miller § 4433, at 78-85 (2d ed. 2002)). Accord Leo v. Garmin Intern., Inc., 464 F. App'x 737, 740 (10th Cir. 2012)(unpublished)("[I]t does not matter that [the plaintiff's] first appeal had not been resolved at the time [he] filed his second suit because under the federal law of claim preclusion, the district court's order was final for res judicata purposes."). Courts occasionally refer to the two different effects of judgments under the doctrine of res judicata with various and sometimes conflicting terminology. See 18 Wright & Miller § 4402, at 7 ("The effects of former adjudication have been discussed and determined in varying and occasionally conflicting terminology."). "[T]he broad 'res judicata' phrase refers to the distinctive effects of a judgment separately characterized as 'claim preclusion' and 'issue preclusion.'" 18 Wright & Miller

§ 4402, at 7.  The United States Court of Appeals for the Fifth Circuit has presented a summary that explains the two doctrines:

> The rules of res judicata, as the term is sometimes sweepingly used, actually comprise two doctrines concerning the preclusive effect of a prior adjudication.  The first such doctrine is "claim preclusion," or true res judicata.  It treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same "claim" or "cause of action."  When the plaintiff obtains a judgment in his favor, his claim "merges" in the judgment; he may seek no further relief on that claim in a separate action.  Conversely, when a judgment is rendered for a defendant, the plaintiff's claim is extinguished; the judgment then acts as a "bar."  Under these rules of claim preclusion, the effect of a judgment extends to the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial.  The aim of claim preclusion is thus to avoid multiple suits on identical entitlements or obligations between the same parties, accompanied, as they would be, by the redetermination of identical issues of duty and breach.
>
> The second doctrine, collateral estoppel or "issue preclusion," recognizes that suits addressed to particular claims may present issues relevant to suits on other claims.  In order to effectuate the public policy in favor of minimizing redundant litigation, issue preclusion bars the relitigation of issues actually adjudicated, and essential to the judgment, in a prior litigation between the same parties.  It is insufficient for the invocation of issue preclusion that some question of fact or law in a later suit was relevant to a prior adjudication between the parties; the contested issue must have been litigated and necessary to the judgment earlier rendered.

Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc., 575 F.2d 530, 535-36 (5th Cir. 1978) (citations omitted).  The following principles apply in federal-question cases -- and are generally consistent with state-law res judicata rules -- but "[f]or judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits."  Taylor v. Sturgell, 553 U.S. 880, 891 n.4 (2008)(citing Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508 (2001)).

### 1.  Claim Preclusion a/k/a Res Judicata.

"The doctrine of res judicata, or claim preclusion, 'bars a second suit involving the same parties or their privies based on the same cause of action.'"  Roybal v. City of Albuquerque,

No. CIV 08-0181 JB/LFG, 2009 WL 1300048, at *5 (D.N.M. Feb. 2, 2009)(Browning, J.) (quoting Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979)).  "Under Tenth Circuit law, claim preclusion applies when three elements exist: (1) a final judgment on the merits in an earlier action; (2) identity of the parties in the two suits; and (3) identity of the cause of action in both suits."  MACTEC, Inc. v. Gorelick, 427 F.3d at 831.  The Tenth Circuit has adopted the "transactional" approach from § 24 of the Restatement (Second) of Judgments to determine what constitutes a "cause of action" for claim preclusion.  Wilkes v. Wyo. Dep't of Emp't Div. of Labor Standards, 314 F.3d at 504.  Under this approach, a cause of action includes "all claims or legal theories of recovery that arise from the same transaction, event, or occurrence."  Wilkes v. Wyo. Dep't of Emp't Div. of Labor Standards, 314 F.3d at 504 (quoting Nwosun v. Gen. Mills Rest., Inc., 124 F.3d 1255, 1257 (10th Cir. 1997)).  Claim preclusion does not, however, "extend from criminal prosecutions to civil actions."  18B Wright & Miller § 4474, at 420.

The Supreme Court, in Taylor v. Sturgell, clarified when preclusion may appropriately be applied to those who were not actual parties in the earlier litigation.  The Supreme Court stated: "'It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.'" 553 U.S. at 884 (quoting Hansberry v. Lee, 311 U.S. 32, 40 (1940)).  The Supreme Court eliminated the broad doctrine of virtual representation, which allowed preclusion on the grounds of a sufficiently close relationship and which had prevailed in some federal circuits.  See Taylor v. Sturgell, 553 U.S. at 884, 890, 903-904.  Instead, the Supreme Court approved six exceptions to the general rule against non-party preclusion: (i) when the non-party "agrees to be bound by the determination of issues in an action between others," 553 U.S. at 893 (quoting Restatement (Second) of Judgments § 40)

(internal quotation marks omitted); (ii) based on pre-existing substantive legal relationships that "include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor," 553 U.S. at 894 (citation omitted)(internal quotation marks omitted); (iii) when the non-party was "adequately represented by someone with the same interests who" was a party in the prior lawsuit, 553 U.S. at 894 (citation omitted)(internal quotation marks omitted); (iv) when the non-party assumed control over the earlier litigation, see 553 U.S. at 895; (v) when the non-party is suing on behalf of the party to the earlier litigation, see 553 U.S. at 895; and (vi) where a "a special statutory scheme" forecloses successive litigation, provided the scheme is consistent with due process, 553 U.S. at 895.  The Supreme Court did not eliminate all aspects of virtual representation -- the situations other courts labeled virtual representation were too diverse and could be justified on traditional grounds.  Instead, the Supreme Court declared that "[t]he preclusive effects of a judgment in a federal-question case decided by a federal court should . . . be determined according to the established grounds for nonparty preclusion described in" Taylor v. Sturgell.  553 U.S. at 904.

### 2.     Issue Preclusion a/k/a Collateral Estoppel.

Where the causes of action are not identical, the second aspect of the doctrine of res judicata, termed "collateral estoppel" or "issue preclusion," may still preclude parties from relitigating issues in a second, not identical cause of action, where the particular issues were litigated in a prior case.  See In re Corey, 583 F.3d 1249, 1251 (10th Cir. 2009)("The doctrine of issue preclusion prevents a party that has lost the battle over an issue in one lawsuit from relitigating the same issue in another lawsuit.").  The Tenth Circuit has stated: "Under federal law, issue preclusion attaches only when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment."  In

re Corey, 583 F.3d at 1251 (quoting Arizona v. California, 530 U.S. 392, 414 (2000);

Restatement (Second) of Judgments § 27 cmt. e)(alterations omitted)(internal quotation marks

omitted).   See Restatement (Second) of Judgments § 27 ("When an issue of fact or law is

actually litigated and determined by a valid and final judgment, and the determination is essential

to the judgment, the determination is conclusive in a subsequent action between the parties,

whether on the same or a different claim.").   The Tenth Circuit's test for issue preclusion under

res judicata consists of four elements:

> (1) the issue previously decided is identical with the one presented in the action in
> question, (2) the prior action has been fully adjudicated on the merits, (3) the
> party against whom the doctrine is invoked was a party, or in privity with a party,
> to the prior adjudication, and (4) the party against whom the doctrine is raised had
> a full and fair opportunity to litigate the issue in the prior action.

Adams v. Kinder-Morgan, Inc., 340 F.3d 1083, 1093 (10th Cir. 2003)(quoting United States v.

Botefuhr, 309 F.3d 1263, 1282 (10th Cir. 2002)).

"It is well established that a prior criminal conviction may work an estoppel in favor of

the Government in a subsequent civil proceeding."   Emich Motors Corp. v. Gen. Motors Corp.,

340 U.S. 558, 568 (1951).   See Considine v. United States, 683 F.2d 1285, 1286 (9th Cir. 1982)

("A prior conviction will estop a party from contesting in a later civil suit any element

necessarily established in the criminal trial.").   The Tenth Circuit has stated that whether a

defendant is estopped from relitigating an issue after a criminal trial "is whether the question was

'distinctly put in issue and directly determined' in the criminal prosecution."   Metros v. U.S.

Dist. Court for the Dist. of Colo., 441 F.2d 313, 316 (10th Cir. 1970)(quoting Emich Motors

Corp. v. Gen. Motors Corp., 340 U.S. at 569).   Thus, "[i]n the case of a criminal conviction

based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as

having been determined by the judgment."   Metros v. U.S. Dist. Court for the Dist. of Colo., 441

F.2d at 316 (quoting <u>Emich Motors Corp. v. Gen. Motors Corp.</u>, 340 U.S. at 569)(internal

quotation marks omitted).

> With respect to issues determined in a criminal prosecution: (1) A judgment in favor of the prosecuting authority is preclusive in favor of the government: (a) In a subsequent civil action between the government and the defendant in the criminal prosecution, as stated in § 27 with the exceptions stated in § 28.

<u>Restatement (Second) of Judgments</u> § 85.

## LAW REGARDING LIABILITY FOR CONSTITUTIONAL VIOLATIONS UNDER <u>42 U.S.C. § 1983</u>

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law."  <u>West v. Atkins</u>, 487

U.S. 42, 48 (1988).  Individual, non-supervisory defendants may be liable if they knew or

reasonably should have known that their conduct would lead to the deprivation of a plaintiff's

constitutional rights by others, and an unforeseeable intervening act has not terminated their

liability.  <u>See</u> <u>Martinez v. Carson</u>, 697 F.3d 1252, 1255 (10th Cir. 2012)("The requisite causal

connection is satisfied if [the defendants] set in motion a series of events that [the defendants]

knew or reasonably should have known would cause others to deprive [the plaintiffs] of [their]

constitutional rights.")(quoting Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006)). The Supreme Court has made clear that there is no respondeat superior liability under 42 U.S.C. § 1983. See Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)("Because vicarious liability is inapplicable to Bivens[16] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997). "An entity cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor." Garcia v. Casuas, No. CIV 11-0011 JB/RHS, 2011 WL 7444745, at *25 (D.N.M. Dec. 8, 2011) (Browning, J.)(citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 689 (1978)). Supervisors can be held liable only for their own unconstitutional or illegal policies, and not for the employees' tortious acts. See Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998).

### 1.   Color of State Law.

"Under Section 1983, liability attaches only to conduct occurring 'under color of law.'" Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1447 (10th Cir. 1995). The under-color-of-state-law requirement is a "jurisdictional requisite for a § 1983 action, which . . . furthers the fundamental goals of preserving an area of individual freedom by limiting the reach of federal law . . . and avoiding imposing on the state, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." Jojola v. Chavez, 55 F.3d 488, 492 (10th Cir. 1995). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only

---

[16]In Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), the Supreme Court held that a violation of the Fourth Amendment "by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct." 403 U.S. at 389.

because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. at 49 (quoting United States v. Classic, 313 U.S. 299, 326 (1941)).  "The authority with which the defendant is allegedly 'clothed' may be either actual or apparent." Jojola v. Chavez, 55 F.3d at 493.  Accordingly, at a base level, to find that an action was taken under color of state law, the court must find that "'the conduct allegedly causing the deprivation of a federal right' must be 'fairly attributable to the State.'" Gallagher v. Neil Young Freedom Concert, 49 F.3d at 1447 (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)).

In the context of a public employee, the Tenth Circuit has directed that, while "'state employment is generally sufficient to render the defendant a state actor . . . [,]' at the same time, it is 'well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state.'" Jojola v. Chavez, 55 F.3d at 493 (quoting Lugar v. Edmondson Oil Co., 457 U.S. at 935-36 n.18; Mark v. Borough of Hatboro, 51 F.3d 1137, 1150 (3d Cir. 1995)).  Thus, "before conduct may be fairly attributed to the state because it constitutes action 'under color of state law,' there must be 'a real nexus' between the employee's use or misuse of their authority as a public employee, and the violation allegedly committed by the defendant." Jojola v. Chavez, 55 F.3d at 493.  What constitutes the required real nexus, however, is not completely clear.  As the Tenth Circuit has stated, whether there is a real nexus in a particular case depends on the circumstances:

> The under color of law determination rarely depends on a single, easily identifiable fact, such as the officer's attire, the location of the act, or whether or not the officer acts in accordance with his or her duty.  Instead one must examine "the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties."

David v. City & Cnty. of Denver, 101 F.3d 1344, 1353 (10th Cir. 1996)(citations omitted) (quoting Martinez v. Colon, 54 F.3d 980, 986 (1st Cir. 1995)).

2. **Individual Liability.**

Government actors may be liable for the constitutional violations that another committed, if the actors "set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights," thus establishing the "requisite causal connection" between the government actor's conduct and a plaintiff's constitutional deprivations. Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006). The Tenth Circuit has explained that § 1983 liability should be "'read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'" Martinez v. Carson, 697 F.3d at 1255 (quoting Monroe v. Pape, 365 U.S. 167, 187 (1961), overruled in part by Monell v. Dep't of Soc. Servs., 436 U.S. at 663). "Thus, Defendants are liable for the harm proximately caused by their conduct." Martinez v. Carson, 697 F.3d at 1255 (citing Trask v. Franco, 446 F.3d at 1046). As the Court has previously concluded, "a plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations. The recovery should be guided by common-law tort principles -- including principles of causation . . . ." Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1251 (D.N.M. 2009) (Browning, J.).

The Tenth Circuit has found liability for those defendants who proximately caused an injury alleged under § 1983 and stated that the fact that the "conduct of other people may have concurrently caused the harm does not change the outcome as to [the defendant]," so long as there was not a superseding-intervening cause of a plaintiff's harm. Lippoldt v. Cole, 468 F.3d 1204, 1220 (10th Cir. 2006).

> Even if a factfinder concludes that the residential search was unlawful, the officers only "would be liable for the harm 'proximately' or 'legally' caused by

their tortious conduct." Bodine v. Warwick, 72 F.3d 393, 400 (3d Cir. 1995).
"They would not, however, necessarily be liable for all of the harm caused in the
'philosophic' or but-for sense by the illegal entry." 72 F.3d at 400. In civil rights
cases, a superseding cause, as we traditionally understand it in tort law, relieves a
defendant of liability. See, e.g., Warner v. Orange Cnty. Dep't of Prob., 115 F.3d
1068, 1071 (2d Cir. 1997); Springer v. Seaman, 821 F.2d 871, 877 (1st Cir. 1987),
abrogated on other grounds by Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701
(1989).

Trask v. Franco, 446 F.3d at 1046. Thus, in the context of a claim under the Fourth Amendment,

the Tenth Circuit has held that government actors "may be held liable if the further unlawful

detention and arrest would not have occurred but for their conduct and if there were no

unforeseeable intervening acts superseding their liability." Martinez v. Carson, 697 F.3d at

1255. The Tenth Circuit gave an example of a superseding-intervening cause, quoting the

Honorable Samuel J. Alito, then-United States Circuit Judge for the United States Court of

Appeals for the Third Circuit:

> Suppose that three police officers go to a suspect's house to execute an
> arrest warrant and that they improperly enter without knocking and announcing
> their presence. Once inside, they encounter the suspect, identify themselves,
> show him the warrant, and tell him that they are placing him under arrest. The
> suspect, however, breaks away, shoots and kills two of the officers, and is
> preparing to shoot the third officer when that officer disarms the suspect and in
> the process injures him. Is the third officer necessarily liable for the harm caused
> to the suspect on the theory that the illegal entry without knocking and
> announcing rendered any subsequent use of force unlawful? The obvious answer
> is "no." The suspect's conduct would constitute a "superseding" cause, see
> Restatement (Second) of Torts § 442 (1965), that would limit the officer's
> liability. See id. § 440.

Trask v. Franco, 446 F.3d at 1046 (quoting Bodine v. Warwick, 72 F.3d at 400). Additionally,

"[f]oreseeable intervening forces are within the scope of the original risk, and . . . will not

supersede the defendant's responsibility." Trask v. Franco, 446 F.3d at 1047 (quoting William

Lloyd Prosser et al., Prosser and Keeton on Torts § 44, at 303-04 (5th ed.1984)). If

> the reasonable foreseeability of an intervening act's occurrence is a factor in
> determining whether the intervening act relieves the actor from liability for his

antecedent wrongful act, and under the undisputed facts there is room for reasonable difference of opinion as to whether such act was wrongful or foreseeable, the question should be left for the jury.

Trask v. Franco, 446 F.3d at 1047 (citing Restatement (Second) of Torts § 453 cmt.b (1965)).

### 3.      Supervisory Liability.

The Tenth Circuit has held that supervisors are not liable under 42 U.S.C. § 1983 unless there is "'an affirmative link . . . between the constitutional deprivation and either the supervisor's personal participation, . . . exercise of control or direction, or . . . failure to supervise.'"   Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009)(quoting Green v. Branson, 108 F.3d 1296, 1302 (10th Cir. 1997))(alterations omitted).  Because supervisors can be held liable only for their own constitutional or illegal policies, and not for the torts that their employees commit, supervisory liability requires a showing that such policies were a "deliberate or conscious choice."   Barney v. Pulsipher, 143 F.3d at 1307-08 (citations omitted)(internal quotation marks omitted).  Cf. Bd. of Cnty. Comm'rs v. Brown, 520 U.S. at 404 ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."  (emphasis in original)).

The Tenth Circuit has recognized that Ashcroft v. Iqbal limited, but did not eliminate, supervisory liability for government officials based on an employee's or subordinate's constitutional violations.  See Garcia v. Casuas, 2011 WL 7444745, at *25-26 (citing Dodds v. Richardson, 614 F.3d 1185 (10th Cir. 2010)).  The language that may have altered the landscape for supervisory liability in Ashcroft v. Iqbal is as follows: "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official

- 37 -

defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. at 676. The Tenth Circuit in Dodds v. Richardson held:

> Whatever else can be said about Iqbal, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution . . . ."

614 F.3d at 1199. The Tenth Circuit noted that Ashcroft v. Iqbal "does not purport to overrule existing Supreme Court precedent," but stated that "Iqbal may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit in ways we do not need to address to resolve this case." Dodds v. Richardson, 614 F.3d at 1200. It concluded that Ashcroft v. Iqbal did not alter "the Supreme Court's previously enunciated § 1983 causation and personal involvement analysis." Dodds v. Richardson, 614 F.3d at 1200. The Tenth Circuit, based on this conclusion, set forth a test for supervisory liability under § 1983 after Ashcroft v. Iqbal:

> A plaintiff may . . . succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.

Dodds v. Richardson, 614 F.3d at 1199-1200 (citing Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)). The Tenth Circuit noted, however: "We do not mean to imply that these are distinct analytical prongs, never to be intertwined." Dodds v. Richardson, 614 F.3d at 1200 n.8. Relying on the Supreme Court's opinion in Board of County Commissioners v. Brown, the Tenth Circuit reasoned that two of the prongs often, if not always, are sufficient proof that the third prong has been met also:

> Where a plaintiff claims that a particular municipal action itself violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward.   Section 1983 itself contains no state-of-mind requirement independent of that necessary to state a violation of the underlying federal right. In any § 1983 suit, however, the plaintiff must establish the state of mind required to prove the underlying violation.   Accordingly, proof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably.   Similarly, the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains.

Dodds v. Richardson, 614 F.3d at 1200 n. 8 (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. at 404-05)(internal quotation marks omitted).  The Tenth Circuit noted that "[w]e think the same logic applies when the plaintiff sues a defendant-supervisor who promulgated, created, implemented or possessed responsibility for the continued operation of a policy that itself violates federal law."  Dodds v. Richardson, 614 F.3d at 1200 n.8.  Thus, the Tenth Circuit reduced the test to what can be seen as a two-part test for supervisor liability, requiring the plaintiff to prove "an 'affirmative' link . . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . -- express or otherwise -- showing their authorization or approval of such misconduct.'"  Dodds v. Richardson, 614 F.3d at 1200-01 (quoting Rizzo v. Goode, 423 U.S. 362, 371 (1976)).

### 4. **Municipal Liability.**

A municipality will not be held liable under § 1983 solely because its officers inflicted injury.  See Graves v. Thomas, 450 F.3d 1215, 1218 (10th Cir. 2006).  Rather, to establish municipal liability under § 1983, a plaintiff must demonstrate: (i) that an officer committed an underlying constitutional violation; (ii) that a municipal policy or custom exists; and (iii) that there is a direct causal link between the policy or custom, and the injury alleged.  See Graves v. Thomas, 450 F.3d at 1218.  When a claim is brought against a municipality for failing to train its

officers adequately, the plaintiff must show that the municipality's inaction was the result of deliberate indifference to the rights of its inhabitants.  See Graves v. Thomas, 450 F.3d at 1218.

## LAW REGARDING PROCEDURAL DUE PROCESS

The Fourteenth Amendment states: "No State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  The Due Process Clause encompasses two distinct forms of protection: (i) procedural due process, which requires a state to employ fair procedures when depriving a person of a protected interest; and (ii) substantive due process, which guarantees that a state cannot deprive a person of a protected interest for certain reasons.  See, e.g., Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998).  "Under either form of protection, however, a person must have a protected interest in either life, liberty, or property."  Chavez-Rodriguez v. City of Santa Fe, No. 07-0633, 2008 WL 5992271, at *6 (D.N.M. Oct. 9, 2008)(Browning, J.).

"The Constitution does not create or define the contours of 'liberty' or 'property,' the 'broad and majestic terms' enshrined in the Fourteenth Amendment."  Farthing v. City of Shawnee, Kan., 39 F.3d 1131, 1135 (10th Cir. 1994)(quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 571 (1972)).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."  Bd. of Regents of State Colls. v. Roth, 408 U.S. at 577.  "Such an interest arises not from the Due Process Clause of the Constitution itself, but is 'created by independent sources such as a state or federal statute, a municipal charter or ordinance, or an implied or express contract.'"  Teigen v. Renfrow, 511 F.3d 1072, 1079 (10th Cir. 2007).  See Bd. of Regents of State Colls. v. Roth, 408 U.S. at 577 ("Property interests, of course, are not created by the Constitution.  Rather they are created and

their dimensions are defined by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."); Farthing v. City of Shawnee, Kan., 39 F.3d at 1135 ("Rather, property interests, which are the subject of the present litigation, 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. at 577)); Paul v. Davis, 424 U.S. 693, 710 (1976)("[Liberty and property] interests attain . . . constitutional status by virtue of the fact that they have been initially recognized and protected by state law.").

"[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'"  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)(citing Morrissey v.. Brewer, 408 U.S. 471, 481 (1972)).  "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 542 (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)).  The Supreme Court has described

> "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest."  This principle requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment.
>
> . . . .
>
> [T]he pretermination "hearing," though necessary, need not be elaborate.  We have pointed out that "[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings."  In general, "something less" than a full evidentiary hearing is sufficient prior to adverse administrative action.

Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 542, 545 (footnote omitted)(citations omitted).

### LAW REGARDING TAKINGS CLAIMS UNDER THE FIFTH AMENDMENT

The Takings Clause provides that "private property" shall not "be taken for public use, without just compensation." U.S. Const. amend. V. The Supreme Court has stated: "The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, . . . prohibits the government from taking private property for public use without just compensation." Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001). A government actor can "take" property for the purposes of the Fifth Amendment either by physically depriving the owner of the property or by placing upon the property such restrictive regulations that the owner is effectively deprived of the ability to use the property. See Palazzolo v. Rhode Island, 533 U.S. at 617 (noting that "even a minimal permanent physical occupation of real property requires compensation under the Clause, and that a regulation which denies all economically beneficial or productive use of land will require compensation under the Takings Clause" (internal quotation marks omitted)).

### ANALYSIS

The Stipulation that dismissed the federal claims in the First Complaint now bars all federal claims in the Current Complaint under principles of claim preclusion. "To apply the doctrine of res judicata, three elements must exist: (1) a judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits."[17] King v. Union Oil Co. of Cal., 117 F.3d 443, 445 (10th Cir. 1997)(Tacha, J.)

---

[17]A fourth quasi-prong exists, requiring that the party against whom claim preclusion is to be applied had a "full and fair opportunity to litigate the claims and issues settled in that [earlier] suit." Pelt v. Utah, 539 F.3d 1271, 1281 (10th Cir. 2008)(citations omitted)(internal quotation

(citing Satsky v. Paramount Commc'n, Inc., 7 F.3d 1464, 1467 (10th Cir. 1993)).  The parties

agree that the first two prongs are satisfied: (i) the Stipulation is a "judgment on the merits in an

earlier action" -- settlement agreements would have little force if qualifying that a dismissal was

"with prejudice" failed to give the dismissal preclusive effect, Stipulation at 2 (providing that all

federal claims in that action are dismissed "with prejudice"); Schmier v. McDonald's LLC, 569

F.3d at 1242 (10th Cir.)("'A voluntary dismissal with prejudice operates as a final adjudication

on the merits . . . ."  (citation omitted)(internal quotation marks omitted)); and (ii) the parties in

this case are the same ones that the Stipulation directly absolved from liability, compare First

Complaint ¶ 3, at 7, and id. ¶¶ 7-13, at 11-12, with Current Complaint ¶¶ 9-18, at 3-5.

The only contested issue is whether there is "identity of the cause of action in both suits."

King v. Union Oil Co. of Cal., 117 F.3d at 445.  Borrowing from the Restatement (Second) of

Judgments, the Tenth Circuit (i) takes a broad view of what constitutes a "cause of action" for res

judicata purposes; and (ii) directs that if there is substantial overlap -- let alone identity --

between the new and old cause of action, the new claim is barred.

> (1)    When a valid and final judgment rendered in an action extinguishes the
>        plaintiff's claim pursuant to the rules of merger or bar, the claim
>        extinguished includes all rights of the plaintiff to remedies against the
>        defendant with respect to all or any part of the transaction, or series of
>        connected transactions, out of which the action arose.
>
> (2)    What factual grouping constitutes a "transaction", and what groupings
>        constitute a "series", are to be determined pragmatically, giving weight to
>        such considerations as whether the facts are related in time, space, origin,
>        or motivation, whether they form a convenient trial unit, and whether their

---

marks omitted).  See Motion at 14 n.4.  This quote expressly contemplates settlement; that a
party did not pursue his or her earlier claim all the way to an adjudication on the merits does not
mean that he or she was deprived of a full and fair "opportunity" to do so.  NM Consolidated
does not contest -- and the Court has no reason to question -- that its earlier suit, which was
litigated in federal court in front of the Honorable Karen B. Molzen, Chief United States
Magistrate Judge for the District of New Mexico, satisfied due process.

treatment as a unit conforms to the parties' expectations or business understanding or usage.

Restatement (Second) of Judgments § 24 (quoted in King v. Union Oil Co. of Cal., 117 F.3d at 445; Lowell Staats Mining Co., 878 F.2d 1271, 1274 (10th Cir. 1989)).   This language is expansive on its face, and the Tenth Circuit interprets it that way as well.

In King v. Union Oil Co. of California, an employer, Unocal, terminated a black employee, King, in what Unocal described as a "reduction in force," i.e., a mass layoff.  117 F.3d at 444.  Unocal invited King -- and all similarly situated employees -- to file a claim form, which contained a provision releasing the employer from any legal liability arising from the termination.  See 117 F.3d at 444.  Unocal offered to provide employees with a severance package in return for executing the release, and it would withhold severance if the employee declined to submit the claim form.  See 117 F.3d at 444.  King initially submitted the form but indicated that he was terminated for his "'[i]nability to perform job assignment . . . because of a disability resulting from illness or injury.'"  117 F.3d at 444 (alteration and omission in King v. Union Oil Co. of Cal.).  Unocal returned the claim form to King, told him that he would have to indicate that he was terminated as part of a reduction in force, and warned him that he would not receive his severance pay until Unocal received the new claim form.  See 117 F.3d at 444.  King never returned a new claim form and instead filed suit against Unocal in federal district court, alleging that he was unlawfully terminated on the basis of his race, disability status, and in retaliation for filing an earlier worker's compensation claim.  See 117 F.3d at 443-44.  That case went to trial, and the jury returned a verdict in favor of Unocal, which withstood appeal.  See 117 F.3d at 443-44.  After receiving the unfavorable judgment on his wrongful-termination claims, King brought a second suit against Unocal, this time for refusing to pay the promised severance package.  See 117 F.3d at 444.  The district court ruled that King was entitled to the severance

package, and the Tenth Circuit reversed, holding that res judicata barred King's suit altogether, and that, if King had wanted to sue for severance, he had every opportunity to do so in his earlier suit:

> King's claims are one for the purposes of res judicata because Unocal's decision to terminate King's employment and its decision to refuse to pay severance benefits are part of a "series of connected transactions."  After King was discharged, Unocal gave King the option of receiving severance benefits or suing for discrimination.  King chose to sue, and Unocal concomitantly refused to pay severance benefits.  Although the termination and later denial of benefits are separate factual events, they are not unrelated transactions.  Rather, both occurred during the period of time from September 11 to December 10, 1992, involved actions by Unocal officials, and arose as a result of King's termination.  Further, King's two suits have a substantial overlap of related facts because King's failure to execute the required release and his decision to bring the first suit formed the basis for Unocal's ultimate decision to deny King's claim for severance benefits.  Thus, King's various claims, if brought together, would form a convenient trial unit.  Finally, King was aware of Unocal's denial of benefits at the time he commenced his first suit and, in the interests of efficiency and fairness, should have brought his ERISA claim in the previous lawsuit.  His failure to do so bars this second suit.
>
> . . . .
>
> Although the factual events giving rise to King's two actions are separate, they form a "series of connected transactions" and thus are sufficiently related to require King to bring all his claims in one lawsuit.  In particular, King's claims are related because his decision to withdraw the release and proceed with his discrimination and retaliation claims provided the basis for Unocal's ultimate refusal to pay him severance benefits, which is the subject of this second suit.
>
> . . . King clearly knew of Unocal's decision to deny him benefits at the time he commenced his first lawsuit.  Thus, King could have brought all his claims in one suit.  To allow King's second suit to proceed as framed would allow precisely the sort of piecemeal litigation, unnecessary expense, and waste of judicial resources that the doctrine of res judicata is designed to prevent.

117 F.3d at 447 (citation omitted).

There is even more overlap between the new and old cause of action in this case than there was in <u>King v. Union Oil Co. of California</u>.  The Stipulation provides, in full:

- 45 -

> Plaintiff, through its attorney, and Defendants, through their attorneys, pursuant to Fed. R. Civ. P. 4l(a)(l)(ii), hereby stipulate to the dismissal with prejudice of Count III of Plaintiffs Complaint, only as to alleging a Fifth Amendment takings claim, and Counts IV and V, alleging federal due process, equal protection, conspiracy and other claims brought pursuant to 42 U.S.C. § 1983.  It is the intent of this stipulation that any federal claim brought in this matter, express or implied, is dismissed with prejudice, however no claims based on the Constitution, Statutes or Common Law of the State of New Mexico will be dismissed.  Plaintiff shall be free to allege any claim based on Constitution, Statutes or Common Law of the State of New Mexico on remand to the District Court of the First Judicial District Each party shall bear their own costs.

Stipulation at 2.  The scope of the release that the Stipulation effectuates is facially broad, dismissing "any" federal claim brought in the entire "matter, express or implied."  Stipulation at 2.  The Current Complaint alleges claims for "deprivation of property rights (42 U.S.C. § 1983)" and "taking of property without just compensation," both of which relate to the same act of alleged inverse condemnation -- the SF Design Board's denial of a building-relocation request and the City Council's subsequent affirmance of the decision -- that was the factual core of the First Complaint's allegations.

Although the Stipulation is the operative legal document -- it is the prior adjudication on the merits -- it is wise to look to the First Complaint to fully interpret the Stipulation's possible contours.  See Stipulation at 2 (providing that "any federal claim brought in this matter, express or implied, is dismissed with prejudice").  If, for example, a governmental defendant condemned two properties that the same plaintiff owned, and the plaintiff filed suit only on property *A*, a stipulation releasing "any federal claims" would not be understood to bar a subsequent takings claim relating to property *B* unless the stipulation specifically said so.  Stipulations, like most documents, are interpreted by first looking to their text, and then using context -- including the text of the complaint whose claims the stipulation dismisses -- to resolve textual ambiguities and vagueness.

- 46 -

On this front, NM Consolidated argues that the allegations in ¶ 57 of the Current

Complaint set forth a new cause of action -- one not set forth in the First Complaint.  See

Response at 9 ("The main allegations against the City are set out in ¶ 57a through k of the

[Current] Complaint.").  Paragraph 57 provides:

57.      The following acts by the City, City officials and members of the City
Council establish that the City intended to take advantage of the Plaintiff's
financial condition and purchase the property while the Plaintiff's
demolition and relocation proposals were under adjudication by the City:

a.      Since at least September 2011, during the time the
Plaintiff's proposal was pending before the HDRB, there
were discussions between members of the Governing
Council of NMSA, members of the Board of Directors of
the Arts Institute and City officials and City Council
members regarding purchase of the Plaintiff's property by
the City and a lease between the City and NMSA/Art
Institute.

b.      On information and belief supported by documentary
evidence, on or about September 21, 2011, City Manager
Robert Romero, City Attorney Geno Zamora and City
Finance Director Mel Morgan agreed with officials of
NMSA/Art Institute to "acquire" the Plaintiff's property
"through all means necessary."

c.      On or about September 2, 2011, over three (3) months
before the Plaintiff's hearing before the HDRB and over
four (4) months before the Proposed Relocation was denied
by the HDRB, officials of NMSA/Art Institute agreed to
solicit Robert Romero and Geno Zamora to create a
Resolution for the City Council to acquire the Plaintiff's
property and to solicit Mayor Coss to present the
Resolution to the City Council after the Plaintiff's proposal
was denied by the HDRB.

d.      On information and belief supported by documentary
evidence, during the September 2, 2011, meeting the
NMSA and Arts Institute officials solicited the Plaintiff's
former attorney, Leonard Katz, to speak with City officials
about the possibility of condemning the School property in
order to acquire it to lease to the Charter School.

e.  On January 11, 2012, the day after the HDRB entered its decision to deny the Plaintiff's Relocation Proposal and during the time for the Plaintiff to file an appeal with the City Council, Mayor David Coss introduced a proposed Resolution to the City Council to purchase the Plaintiff's property.

f.  On January 12, 2012, the Resolution was submitted to the City staff to make a Fiscal Impact Report ("FIR") on the consequences of purchasing the Plaintiff's property.

g.  On or about January 3, 2012, the City and NMSA/Art Institute entered into a Letter of Intent to lease the property to the charter school upon purchase from the current owner or through condemnation, and set forth specific terms as to the proposed lease agreement.  See Letter of Intent - Lease, attached as "Exhibit 3."

h.  On January 25, 2012, during the pendency of the Plaintiff's appeal to the City Council, the Resolution was adopted by the City Council and actions were taken to negotiate a lease agreement with NMSA/Art Institute.  A copy of the Resolution as adopted is attached as "Exhibit 4."

i.  On February 1, 2012, during the pendency of the Plaintiff's appeal to the City Council, City Manager Robert Romero drafted a memorandum posing questions for a meeting between City officials and officials of NMSA/Art Institute on February 2, 2012, where the City had specific questions regarding the proposed lease.  A copy of the memorandum is attached as "Exhibit 5."

j.  One of the questions asked of the Charter School and the Art Institute pertained to the cost of demolition of historic buildings on the property.

k.  Other acts by City officials, employees and City Council members establish that the adjudication, denial of the Plaintiff's proposal, and the decision of the City Council on appeal, were a sham and fraudulent, and designed to wrongfully deny the Plaintiff its right to its property.

Current Complaint ¶ 57a-k.  NM Consolidated argues that, while the First Complaint was about

attacking the SF Design Board and the City Council's decision on its merits, the Current

Complaint alleges something new: an attack on the SF Design Board and the City Council themselves, and the fairness of the process they used to come to their decision.

Unfortunately for NM Consolidated, the First Complaint is itself very broad and factually comprehensive, filling thirty-two pages of pleadings and another eighteen pages of attachments. The same basic allegations of bad faith and unfair process appear in the First Complaint, albeit in less detail:

> 70.   Since the School property had been purchased by the Plaintiff from the Sisters in 2005, there had been reports published in the media quoting City officials as to their intent to acquire the property to relocate the New Mexico School for the Arts.

> 71.   In several media reports City officials mentioned that almost two million dollars ($2,000,000.00) was available to purchase the property.

> 72.   Other reports quoted City officials who favored condemnation proceedings to acquire the property, and the desirability of placing the property in public ownership.

> 73.   The media reports and public statements by City officials increased during 2010 and 2011, when the hearings and decisions of the various government agencies described above occurred.

> . . . .

> 87.   The decision by the Members of the HDRP and the Members of the City Council to deny relocation of the three (3) buildings is a sham and is fraudulent, and is based upon the desire of the Members of the HDRP and the City and its Governing Body to acquire the property for the City through condemnation or to force the Plaintiff to sell his property to the City at a lesser price than the Plaintiff could obtain through a sale to the Veteran's Administration.

> 88.   The proceedings before the HDRP on April 2, 2011, where the Plaintiff was denied permission to demolish unsafe buildings on the property was a sham and was fraudulent, and was based upon the desire of the Members of the HDRP and the City and its Governing Body to acquire the property for the City through condemnation or to reduce the value of the property so that the City could acquire the property at a lesser price.

> . . . .

92.     As shown above, the Defendants unlawfully combined and conspired to deprive the Plaintiff of the right of due process under the law and equal protection under the law, and; further combined and conspired to deprive the Plaintiff of the right of contract and the right to hold and sell property.

First Complaint ¶¶ 70-73, at 21; id. ¶¶ 87-88, at 23-24; id. ¶ 92, at 24.

Even if NM Consolidated were alleging a new "theory" of takings, due process, or § 1983 in the Current Complaint which it did not allege in the First Complaint -- and the Current Complaint does not even really do that -- new theories do not present new causes of action under the Tenth Circuit's chosen framework:

The rule of § 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action

(1)     To present evidence or grounds or theories of the case not presented in the first action, or

(2)     To seek remedies or forms of relief not demanded in the first action.

Restatement (Second) of Judgments § 25.

If NM Consolidated had a federal due-process claim, it should have brought that claim in the First Complaint. Even if the First Complaint had alleged fewer claims than the Current Complaint, and the First Complaint had been adjudicated all the way to a trial on the merits and NM Consolidated had lost, that disposition would still bar NM Consolidated from bringing any new claims relating to building-relocation denial -- including claims that the First Complaint failed to assert. In that situation, NM Consolidated would be in the same position as the plaintiff in King v. Union Oil Co. of California, and allowing a plaintiff to bring such closely related -- but legally distinct -- claims "would allow precisely the sort of piecemeal litigation, unnecessary expense, and waste of judicial resources that the doctrine of res judicata is designed to prevent." 117 F.3d at 447. NM Consolidated went a step further, however, and went out of its way to

- 50 -

affirmatively, specifically dismiss each and every federal claim that could arise from the building-relocation denial -- and not just the ones that it fleshed out to rule 12(b)(6) standards in the First Complaint -- when it executed the broadly worded Stipulation.  The federal claims in the Current Complaint are not claim precluded merely because they are closely related to or "part of the [same] transaction" as the ones in the Stipulation; the Stipulation dismissed those exact claims.  The Court has some sympathy for NM Consolidated, which appears to have not realized the breadth of the Stipulation into which it entered, and it may want to explore the possibility of filing a rule 60(b) motion with Judge Molzen to obtain relief from the Stipulation.  For the time being, however, *dura lex, sed lex*.  The Court will dismiss all federal claims in the Current Complaint.

Having dismissed all federal claims, the Court now remands this case to state court.  The Defendant-Appellees removed this case solely on the basis of federal-question jurisdiction, which the Court has now extinguished by dismissing the federal claims.  See Notice of Removal ¶¶ 6-7, at 2-3, filed February 24, 2015 (Doc. 1).  When the Court exercises supplemental jurisdiction over state-law claims in a case over which its original jurisdiction is federal-question jurisdiction, the Court should generally remand the case to state court -- or, if the case was filed in federal court in the first instance, dismiss the case -- if the Court "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."  Koch v. City of Del City, 660 F.3d 1228, 1239 (10th Cir. 2001)(quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998))(internal quotation marks omitted).  The Court, therefore, will remand this case.

**IT IS ORDERED** that: (i) the Motion for Summary Judgment That Federal Claims in the Third Amended Complaint Are Barred by the Doctrine of Res Judicata, filed June 25, 2014 (Doc. 26), is granted; (ii) all federal claims in the Third Amended Complaint for Damages for Deprivation of Rights Under the New Mexico Constitution and the Constitution of the United States, 42 U.S.C. § 1983, Interference with Contractual Relations, Taking and Inverse Condemnation, filed February 24, 2014 (Doc. 1-1), are dismissed with prejudice; and (iii) this case is remanded to the County of Santa Fe, First Judicial District Court, State of New Mexico.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

John R. Polk
Albuquerque, New Mexico

    *Attorney for the Plaintiff-Appellant*

Philomena M. Hausler
Albuquerque, New Mexico

--and--

Erika E. Anderson
Albuquerque, New Mexico

    *Attorneys for the Defendant-Appellees*